PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| TRUSTEES OF THE SHEET METAL WORKERS' LOCAL UNION NO. 33 PROFIT SHARING ANNUITY FUNDS, *et al*., | ) ) ) ) | CASE NO. 1:09CV01170 |
| Plaintiffs, | ) ) | |
| v. | ) ) | JUDGE BENITA Y. PEARSON |
| BECKLEY MECHANICAL, INC., | ) ) | |
| Defendant. | ) ) | **MEMORANDUM AND ORDER OF OPINION** (Resolving ECF Nos. 34 & 37) |


Plaintiffs Trustees of the Sheet Metal Workers' Local Union No. 33 Profit Sharing

Annuity Fund, Trustees of the Sasmi Trust Fund, Trustees of the Sheet Metal Workers' Local

Union No. 33 Parkersburg District Joint Apprenticeship and Training Committee, Trustees of the

Sheet Metal Workers National Pension Fund, and American Benefit Corp. (collectively

"Plaintiffs," "Trustees, "or "the Funds") filed the present action against Defendant Beckley

Mechanical, Inc. ("Beckley") to recover alleged delinquent fringe benefit contributions pursuant

to § 301 of the Labor Management Relations Act of 1947, as amended 29 U.S.C. § 185, and

Sections 502(a)(3), (e) and (f) of the Employee Retirement Income Security Act of 1974, as

amended 29 U.S.C. § 1132(a)(3), (e) and (f).  ECF No. 1.  Beckley filed an answer with

affirmative defenses.  ECF No. 6.

(1:09CV01170)

Before the Court are the parties' cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56(c). ECF Nos. 34, 37. Upon considering each motion for summary judgment on its own merits, the Court denies Beckley's motion for summary judgment in its entirety (ECF No. 37); and grants, in part, Plaintiffs' motion for summary judgment finding that Beckley is contractually bound to make fringe benefit contributions to the funds and Beckley has no recognized defense to an ERISA collection action (ECF No. 34). Plaintiffs' motion for summary judgment is denied in all other respects.

In accordance with Fed.R.Civ.P 56(g), attached at Appendix A, are material facts not genuinely in dispute.

## I. Background

Plaintiffs, Trustees of several plans and trusts created and maintained by collective bargaining agreements, brought this action against Beckley, a sheet metal fabrication and installation business, to recover alleged delinquent fringe benefit contributions due pursuant to certain collective bargaining agreements. ECF Nos. 1 at 3; 34.

It is undisputed that Beckley, an employer, entered into an Agreement with Plaintiffs requiring Beckley to enter certain collective bargaining agreements.[1] The collective bargaining agreements at issue covered June 1, 2000 through May 31, 2005 and June 1, 2005 through May

---

[1] Beckley is an employer as defined in 29 U.S.C. Section 152(2), with its principal place of business in Beckley, West Virginia; is engaged in business in West Virginia; and is and has been the employer of employees represented by Local 33. ECF Nos. 1 at 3, ¶ 2; 6 at 2, ¶ 2.

(1:09CV01170)

31, 2009.[2]

   Plaintiffs allege that by entering into the Agreement, Beckley (1) agreed to be bound by the terms within the collective bargaining agreement and (2) agreed to make payments in accordance with the terms and conditions of the collective bargaining agreement.  ECF No. 1 at 3, ¶ 3.  The Collective Bargaining Agreement requires employers to "remit all fringe benefit amounts due and owing on or before . . . the 20th day of each calendar month . . . for all hours within the calendar month."  ECF Nos. 1 at 4, ¶ 4; 34-2 at 23.

   Several years after entering into the Agreement, Plaintiffs' auditor, Neil Tramer, reviewed Beckley's records for the years 2005 through 2008 and discovered the following delinquencies:

   1. For the year 2005, in the amount of $98,466.33;
   2. For the year 2006, in the amount of $182,213.01;
   3. For the year 2007, in the amount of $270,475.53; and
   4. For the year 2008, in the amount of $164,689.89.

ECF Nos. 1 at 4, ¶ 7; 6 at 2, ¶ 7.

   As a result of these alleged delinquencies, Plaintiffs allege that they have been damaged collectively in the amount of seven hundred fifteen thousand eight hundred forty-four dollars and 76/100 ($715,844.76) for unpaid fringe benefit payments for the years 2005 through 2008.  ECF No. 1 at 4.  Additionally, pursuant to § 502(g) of ERISA, Plaintiffs allege that Beckley owes ten

---

   [2] Plaintiffs allege that Beckley agreed to "execute the June 1, 2000 to May 31, 2005 Agreement between [Sheet Metal Workers'] Local 33 and [S]outhern West Virginia Sheet Metal and Roofing Contractors Association ("Association"), and the *next* Agreement negotiated between Local 33 and the said Association." ECF Nos. 1 at 3, ¶¶ 2, 6; 1-1; 6 at 2, ¶¶ 2, 3 (emphasis added.)  In addition to the June 1, 2000 to May 31, 2005 Collective Bargaining Agreement, Sheet Metal Workers' Local 33 and Association entered into "the next" collective bargaining agreement, effective from June 1, 2005 to May 31, 2009.  ECF No. 34-3.

-3-

(1:09CV01170)

percent in liquidated damages and twelve percent in interest.  ECF No. 1 at 4, ¶ 8.

## II.  Discussion

### A.  Standard of Review

Federal Rule of Civil Procedure 56(c) governs summary judgment motions, and provides

in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a mater of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary

judgment:

> Supporting and opposing affidavits shall be made on personal knowledge,
> shall set forth such facts as would be admissible in evidence, and shall
> show affirmatively that the affiant is competent to testify to the matters
> stated therein. […] The court may permit affidavits to be supplemented or
> opposed by depositions, answers to interrogatories, or further affidavits.
> When a motion for summary judgment is made and supported as provided
> in this rule, an adverse party may not rest upon the mere allegations or
> denial of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial. If the adverse party does not
> so respond, summary judgment, if appropriate, shall be entered against the
> adverse party.

The movant, however, is not required to file affidavits or other similar materials negating a claim

on which its opponent bears the burden of proof, so long as the movant relies upon the absence

of the essential element in the pleadings, depositions, answers to interrogatories, and admissions

on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

-4-

(1:09CV01170)

The Court must view the evidence in light most favorable to the non-moving party to determine whether a genuine issue of material facts exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *see also White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Cross-motions for summary judgment are examined under the usual Rule 56 standards.  *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005).  Each cross-motion must be evaluated on its own merits, with the court viewing all facts and reasonable inferences in the light most favorable to the non-moving party.  *Appoloni v. U.S.*, 450 F.3d 185, 189 (6th Cir. 2006).

Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact.  *Fulson v. Columbus*,

-5-

(1:09CV01170)

801 F.Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id*.

**B.  Motions for Summary Judgment**

While the Court has made an effort to segregate the report of its analysis and findings of each parties' motion for summary judgment where necessary, economy and reason defy full segregation.  Therefore, common issues and arguments are collectively addressed.

**1.     The Agreement is Not Illegal or Void and Beckley is Contractually Obligated to Make  Fringe Benefit Contributions**

Plaintiffs' Motion for Summary Judgment is premised on Beckley's contractual obligation to make contributions to the funds represented by Plaintiffs pursuant to the collective bargaining agreements.  ECF No. 34 at 10.  To illustrate this obligation, Plaintiffs highlight that Beckley "executed an Agreement dated November 16, 2004, where Defendant agreed, *inter alis*, to execute specific contracts" in exchange for eight promises made as consideration.  ECF Nos. 6 at 2, ¶ 3; 38 at 6-7.  It is undisputed that Beckley entered into an Agreement to execute specific collective bargaining agreements.  The burden of going forward to prove the illegality or voidness of the Agreement shifts to the non-moving party, Beckley.  *See Miyazawa v. City of Cincinnati*, 45 F.3d 126, 127 (6th Cir. 1995).

In its opposition, Beckley summarily argues it is not contractually bound because the Agreement is "illegal and/or void."  ECF No. 39 at 4.  In its own motion for summary judgment, however, Beckley provides a more detailed explanation of why it believes the Agreement is illegal or void and, as a result, why Beckley is not contractually bound to make fringe benefit

(1:09CV01170)

contributions to the fund by offering the following:

> 1. A promise to stifle a criminal prosecution is not valid consideration and against public policy.  ECF No. 37 at 6.  Beckley argues that the Agreement is void because the parties based their contractual consideration on "Local 33 [] hav[ing] its Union Agent, David Mains, withdraw his criminal action against William Mahaffey[,]" the owner and president of Beckley Mechanical, Inc.[3]  ECF No. 36-2, 37-1.

> 2. The withdrawal of a criminal matter, alone, is not valid consideration and "it has long been held under federal common law that such contracts are void."  ECF No. 37 at 14.

> 3. A contract is deemed "illegal where an essential and indivisible part of its consideration is tainted with illegality."  *C.C.C. & St. L. Ry. Co. v. Hirsch*, 204 Fed. 849, 854 (6th Cir. 1913).  Beckley further argues that the promise to withdraw the criminal matter was an essential and indivisible to the facts and circumstances surrounding the criminal charges.  ECF No. 40 at 1-2.

Having considering both its opposition to Plaintiffs' motion and its own motion, the Court finds that Beckley has failed to make an adequate showing that the promised withdrawal of the criminal matter renders the overall Agreement illegal or void.

Only persons entrusted with the requisite authority are permitted to bring criminal charges.  Ohio statutes specify that a complaint, charge, information, or indictment shall not be dismissed solely at the request of the victim and over the objection of the prosecutor or similar person.  *See* O.R.C. 1901.20(A)(2); O.R.C. 1907.02(A)(2); O.R.C. 2930.06(A); O.R.C. 2931.03. At most, an alleged victim like David Mains, can make a complaint of alleged criminal conduct to law enforcement authorities in hopes of having charges brought or, after criminal charges have

---

[3]  The criminal action referred to in the Agreement arose during the negotiations when criminal charges were filed against Bill Mahaffey because of an assault and battery that allegedly perpetuated on David Mains.  *State of West Virginia v. William E. Mahaffey*, Case Nos. 04-M-4951 and 04-M-4952.  ECF No. 37 at 8.

(1:09CV01170)

been preferred, seek to withdraw his complaint in hopes of having the criminal charges imposed

dismissed.  See *State v. Mucci*, 150 Ohio App. 3d 493, 499 (7th Dist. Jefferson County 2002); *see*

*generally* *Patel v. Lowes Home Centers, Inc.*, Case No. 2:05-CV-0775 2007 WL 544049 (S.D.

Ohio Feb. 16, 2007).  The record before the Court shows that Mains did both–he reported the

crime and, later, told the prosecutor that he wished to dismiss the criminal charges.  ECF No. 37

at 15-16; ECF No. 38 at 8.

 It is difficult to tell from the Agreement whether the bargain Beckley hoped for (at the

time it entered the Agreement) was the withdrawal of the complaint that triggered the criminal

action or the dismissal of the criminal action.[4]   Both eventually occurred.  Although Main told

the prosecutor he wanted to withdraw the complaint.  ECF No. 38 at 4; ECF No. 37 at 15-16.

Mains was powerless to ultimately effect the dismissal initiated by the prosecutor's motion to

dismiss and culminating with the court's granting of the motion.  ECF No. 37 at 16; ECF No. 38

at 8.

 Assuming arguendo that Beckley had hoped Main would do more than just withdraw his

complain-- that he would cause the action to be dismissed, then the question arises as to whether

the contract was void as against public policy or due to legal impossibility.  ECF No. 37 at 15-16.

Neither changes the outcome.  As indicated by Plaintiffs "the courts regard a contract as illegal

---

 [4]  In its motion, Beckley offers "there is no issue of material fact that the consideration for entering into a relationship with [Plaintiffs] was that [Plaintiffs] would "stifle' the prosecution of Bill Mahaffey, the president of Beckley, by its 'union agent,' David Mains."  ECF No. 37 at 15. Plaintiffs admit that, Mains, a non-party to the instant litigation agreed to withdraw his complaint but denies that Mains refused to continue assisting the prosecution.  ECF No. 38 at 8.  Such *post hac* information tends to benefit from hindsight and does not prove the intention of either party at the time the Agreement was entered.

-8-

(1:09CV01170)

where an essential and indivisible part of the consideration is tainted with illegality." ECF No.

38 at 7 (quoting Cleveland, C., C. & ST, L. RY. *Co. v. Hirsch*, 204 F. 849 (6th Cir. 1913)).

Under federal common law, the Sixth Circuit has explained that "illegal contract provisions

should not render the entire contract void unless the 'forbidden provision is so basic to the whole

scheme of a contract and so interwoven with all its terms that it must stand or fall as an

entirety.'"[5] *Chattanooga Mailers' Union, Local No. 92 v. Chattanooga News-Free Press Co.*,

*524 F.2d 1305, 1313 (6th Cir. 1975)*, *overruled on other grounds by Bacashihua v. United States*

*Postal Serv., 859 F.2d 402, 404 (6th Cir. 1988))*. The Court agrees.

It's undisputed that in exchange for Beckley's execution of the Collective Bargaining

Agreements, Plaintiffs promised to:

> (1) provide Beckley a letter disclaiming interest in representing Beckley's
> plumbers and pipefitter; (2) withdraw all outstanding charges before the National
> Labor Relations Board and cause related Court action to be withdrawn; (3) have
> its Union Agent, David Mains, withdraw his criminal action against William
> Mahaffey; (4) disclaim chiller work or boiler work not involving duct work; (5)
> allow Beckley to complete jobs already under bid or under contract to, at
> Beckley's option, be completed under the wage and fringe benefits in existence at
> the date of the Agreement; (5) allow work at Beckley's sheet metal shop to be
> performed under the residential agreement; (6) allow Virginia prevailing wage
> work to be performed under the Virginia prevailing wage scale; and (7) allow
> Virginia work to be performed under the residential agreement except those major
> economic areas where the union has control over the wage.

ECF Nos. 38 at 6-7; 36-2.  The promise to withdraw the criminal charges was only one of seven

commitments made in the Agreement.  ECF No. 38 at 7; 36-2.  Neither the Agreement nor the

---

[5]   The Court recognizes that where there is no federal statutory law to apply in ERISA
litigation, federal common law, not state law, should be applied.  *See* Employee Retirement
Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

(1:09CV01170)

submissions of the parties dictate a finding that the promise to "withdraw his criminal action" was such essential or indivisible consideration, whether morally repugnant or not, as to unravel the entire Agreement.

Mains' withdrawal of his criminal complaint does not render the Agreement illegal or void; nor does the withdrawal rise to the level of a genuine issue of material fact or otherwise demand judgment in Beckley's favor on the issue of contractual obligation.  Therefore, summary judgment in Plaintiffs' favor is appropriate as to the issue of whether Beckley is contractually obligated to make fringe benefit contributions to the funds.

### 2.  Beckley Has No Recognized Defense to the ERISA Collection Action

The Sixth Circuit has explained that courts have permitted ERISA defendants to raise the following defenses: "(1) illegality of the original contract; (2) arguments that the contract was void at its inception ( *e.g.*, by fraud in the execution); and (3) decertification of the union." *Plumbers & Pipefitters Local Union No. 572 Health and Welfare Fund v. A&H Mechanical Contractors, Inc.*, No. 02-6131 2004 WL 1208873, at *5 (6th Cir. June 1, 2004).

For the reasons given above, Beckley has not raised a recognizable ERISA defense because the Agreement is neither illegal or void.  Summary judgment in Plaintiffs' favor on the issue of whether Beckley has raised a recognizable ERISA defense is therefore proper.

### 3.  Payment in Settlement of All Delinquencies

Beckley contends that Plaintiffs are barred from seeking damages for 2005-2007 because Beckley previously paid a delinquency of $2,132.08 pursuant to the results of a 2007 audit.  ECF No. 37 at 11, 18.  Beckley argues that the payment constituted a settlement agreement, precluding

-10-

(1:09CV01170)

Plaintiffs from seeking further contributions.  ECF No. 37 at 19.  Plaintiffs responds, in

opposition, that a genuine issue of material fact exists because the payment made does not settle

all delinquent contributions; rather, "the payment only settled the claim for the 'discrepancies

found by the auditor,' not for all possible claims for delinquent contributions for 2005 through

2007."  ECF No. 38 at 21.

Beckley's contention that Plaintiffs are barred from seeking damages for alleged

outstanding 2005-2007 delinquencies is not sufficient to sustain summary judgment in the face of

the contradictory evidence of delinquent contributions for 2005-2007; Plaintiffs' articulation of

its expectation of payment; and concerns (as alluded to herein) about the methodology of any

review undergone to determine the extent of any delinquency.  *Scott v. Harris*, 550 U.S. 372, 380

(2007); *see also* ECF Nos. 1 at 4, ¶ 7; 6 at 2, ¶ 7.  Thus, a material issue of genuine fact exists as

to whether the payment made by Beckley constituted settlement of all outstanding delinquencies.

Summary judgment on this issue in favor of Beckley is denied.

> **4.      The "Audit" and the Delinquencies Identified Present Genuine Issues of Material Fact**

Genuine factual disputes exists as to whether the audit of Beckley's records reveals a

delinquency, and whether the review Plaintiffs' label an "audit" was completed in accordance

with generally accepted accounting principles as required.  In determining whether a genuine

dispute as to a material fact is present, the court must view the evidence through the prism of the

substantive evidentiary burden.  *Anderson*, 477 U.S. at 252-53 (1986) (explaining that when

ruling on summary judgment, a judge must view evidence "through the prism of the substantive

evidentiary burden").

-11-

(1:09CV01170)

>Under Sixth Circuit precedent, where an ERISA fund plaintiff has provided proof
>of an employer's failure to pay fringe benefit contributions on behalf of its
>employees for work covered by a collective bargaining agreement, the burden
>shifts to the employer to produce evidence as to what work is not covered.

*Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696-97 (6th Cir.1994) (citing *Plumbers Local 98 Defined Benefit Pension Fund v. M&P Master Plumbers of Michigan, Inc.*, 608 F.Supp.2d 873, 881 (E.D. Mich. 2009)).[6]

Plaintiffs allege that Neil Tramer, CPA, conducted an audit of the "records provided by Beckley and Plaintiffs." ECF No. 34 at 14.  The audit revealed that Beckley was delinquent in the amount of $98,466.33 in the year 2005; $182,213.01 in the year 2006; $270,475.53 in the year 2007; and $164,689.89 in the year 2008.  ECF No. 34 at 11.  Beckley appealed the results of the audit on April 16, 2009, claiming its results inaccurate.  ECF No. 34 at 11.  Plaintiffs counter that Beckley has failed to provide records or documentary evidence establishing that the audit was inaccurate.

In its motion for summary judgment, Beckley argues that it is not obligated to pay the alleged delinquencies because the "audit" was a "compliance" engagement and, as such, not in accordance with generally accepted accounting principles.  ECF No. 37 at 11, 18, Section 5.[7]

_____

[6] "ERISA Section 209, 29 U.S.C. § 1059 mandates that an employer maintain records with respect to each of its employees, sufficient to determine what benefits are owing to them." *Plumbers Local 98 Defined Benefit Pension Fund*, 608 F.Supp.2d at 881.

[7] The collective bargaining agreements state the following: "The Trustees shall notify the Participating Employer, in writing, of their desire to audit, and allow sufficient notice for the Participating Employer to make available in his premises those payroll records and other records, reports and data reasonably necessary to conduct the *audit in accordance with generally accepted auditing standards*." ECF No. 1-2 at 24, Section 5 (emphasis added).

-12-

(1:09CV01170)

The collective bargaining agreements require that the an "audit" be conducted  "in accordance with generally accepted auditing standards."  ECF No. 1-2 at 24.  To substantiate its objection, Beckley cites to Neil Tramer's deposition testimony explaining the following:

> What we're dealing with here is really an engagement where we've defined what we're going to do. And we've done it. It's–you can't really use the word audit. It's a predefined engagement, because we don't have all the information necessary to create a comprehensive illustration, because we have to fill in the void with assumptions. The void that we're filling in primarily relates to those 1099 contractors.

ECF No. 33 at 72-73.  Tramer testified that he did not conduct an audit, but rather reviewed various records.  ECF Nos. 33 at 73; 37 at 12.  Therefore, Beckley contends that no reasonable factfinder could find that it owes contributions based on Tramer's compliance engagement.  ECF No. 37 at 18.

Upon review, the Court finds that a genuine issue of material fact exists as to whether (1) the methodology–audit, compliance review or other engagement– used to determine the alleged delinquency satisfies Plaintiffs' burden to provide proof of the extent of Beckley's failure to pay fringe benefit contributions and (2) the extent of any alleged delinquent contributions.  Summary judgment on this issue, in favor of either party, is, therefore, improper.

### III.  Conclusion

For the reasons provided above, summary judgment is granted in Plaintiffs' favor on the issues of (1) Beckley being contractually obligated to make fringe benefit contributions to the funds and (2) Beckley having no recognized defense to an ERISA collection action.  ECF No. 34. All other aspects of Plaintiffs' motion for summary judgment is denied.  Beckley's motion for summary judgment is denied in its entirety.  ECF No. 37.

(1:09CV01170)

This matter is set for trial and a final pretrial on November 28, 2011 and November 10, 2011, respectively.  A full trial order will issue separately.

IT IS SO ORDERED.


June 20, 2011                                        /s/ Benita Y. Pearson
Date                                              Benita Y. Pearson
                                                  United States District Judge

-14-

(1:09CV01170)

## APPENDIX A–Undisputed Facts

1. Defendant Beckley Mechanical, Inc.("Beckley") is an employer as defined in 29 U.S.C. Section 152(2), with its principal place of business in Beckley, West Virginia; is engaged in business in West Virginia; and is and has been the employer of employees represented by Local 33.  ECF Nos. 1 at 3, ¶ 2; 6 at 2, ¶ 2.

2. By signature dated November 16, 2004, Defendant agreed to be bound by the terms contained within the collective bargaining agreement dated June 1, 2000 through May 31, 2005 and the next collective bargaining agreement dated June 1, 2005 through May 31, 2009.  ECF Nos. 1 at 3, ¶ 3; 6 at 2 ¶ 3.

3. Beckley was required to operate under the Sheet Metal Workers' International Association Local Union No. 33's collective bargaining agreement with the Association, to wit: collective bargaining agreement effective June 1, 2000 though May 31, 2005 and collective bargaining agreement effective June 1, 2005 through May 31, 2009.  ECF Nos. 34 at 8; 37 at 9.

4. The collective bargaining agreements at issue require employers to make fringe contributions to various funds and trusts, including the funds and trusts operated by Plaintiffs.  ECF Nos. 34 at 8; 37 at 9.

5. The payments are required to be made, submitted and paid to the Plans and Local 33 not later than the 20th day of the month following the month during which the work was performed.  If said payments are not so received by the 20th day of the month following the month during which the work was performed, the employer is deemed delinquent. ECF Nos. 1 at 3, ¶ 4; 6 at 2, ¶ 4.

6. Beckley has been engaged in the sheet metal fabrication and installation business and has employed persons who are subject to the terms of the collective bargaining agreements. ECF Nos. 1 at 3, ¶ 6; 6 at 2 ¶ 6.

7. On February 24, 2009, Neil Tramer, CPA, at the request of Plaintiffs', reviewed Beckley's records for the years 2005 through 2008.  ECF Nos. 1 at 4, ¶ 7; 6 at 2 ¶ 7.

8. Neil Tramer, CPA,  conducted an "audit" or "compliance engagement" of Beckley's contributions from 2005 through 2008.  ECF No. 34 at 8; 37 at 11.

9. Neil Tramer found that Beckley had made delinquent contributions to the funds for the years 2005 through 2008.  Plaintiffs request damages for the allegedly delinquent contributions not made by Beckley for the years 2005 through 2008 totaling approximately $715,000.  ECF No. 34 at 8; 37 at 13.